```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF DELAWARE


REEFEDGE NETWORKS, LLC,          )
                                 )
      Plaintiff,                 )    Civil Action
                                 )    No. 12-1042-LPS
v.                               )
                                 )
ARUBA NETWORKS INC.,             )
                                 )
      Defendant.                 )


------------------------------------------------------------
REEFEDGE NETWORKS, LLC,          )
                                 )
      Plaintiff,                 )    Civil Action
                                 )    No. 12-1043-LPS
v.                               )
                                 )
CISCO SYSTEMS, INC.,             )
                                 )
      Defendant-Counterclaimant. )
------------------------------------------------------------
REEFEDGE NETWORKS, LLC,          )
                                 )
      Plaintiff,                 )    Civil Action
                                 )    No. 12-1044-LPS
v.                               )
                                 )
MERU NETWORKS, INC.,             )
                                 )
      Defendant-Counterclaimant. )
------------------------------------------------------------
REEFEDGE NETWORKS, LLC,          )
                                 )
      Plaintiff,                 )    Civil Action
                                 )    No. 12-1143-LPS
v.                               )
                                 )
ADTRAN INC.,                     )
                                 )
      Defendant.                 )
------------------------------------------------------------
```

```
REEFEDGE NETWORKS, LLC,          )
                                 )
     Plaintiff,                  )    Civil Action
                                 )    No. 12-1149-LPS
v.                               )
                                 )
BROCADE COMMUNICATIONS           )
SYSTEMS INC.,                    )
                                 )
     Defendant.                  )
-----------------------------------------------------------
REEFEDGE NETWORKS, LLC,          )
                                 )
     Plaintiff,                  )    Civil Action
                                 )    No. 12-1674-LPS
v.                               )
                                 )
MERAKI, INC.,                    )
                                 )
     Defendant.                  )
-----------------------------------------------------------
REEFEDGE NETWORKS, LLC,          )
                                 )
     Plaintiff,                  )    Civil Action
                                 )    No. 13-412-LPS
v.                               )
                                 )
JUNIPER NETWORKS INC.,           )
                                 )
     Defendant.                  )
```

                    Tuesday, July 1, 2014
                    12:05 p.m.

                    844 North King Street
                    Wilmington, Delaware


     BEFORE:  The HONORABLE LEONARD P. STARK
              United States District Judge


                    *TELECONFERENCE*

```
 1    APPEARANCES:        FARNAN LLP
                          BY: BRIAN E. FARNAN, ESQ.
 2
                          -and-
 3
                          RUSS AUGUST & KABAT
 4                        BY: BRIAN D. LEDAHL, ESQ.
                          BY: PAUL A. KROEGER, ESQ.
 5
                           for the plaintiff
 6
                          DUANE MORRIS LLP
 7                        BY: MATTHEW C. GAUDET, ESQ.

 8                         for Aruba Networks Inc., Cisco
                           Systems, Inc., and Meraki, Inc.
 9
                          MORRIS, NICHOLS, ARSHT & TUNNELL LLP
10                        BY: MICHAEL J. FLYNN, ESQ.

11                        -and-

12                        IRELL & MANELLA LLP
                          BY: TIMOTHY J. HEGGEM, ESQ.
13                        BY: DOUGLAS J. DIXON, ESQ.

14                         for Juniper Networks Inc.

15                        POTTER ANDERSON & CORROON LLP
                          BY: RICHARD L. HORWITZ, ESQ.
16
                          -and-
17
                          K & L GATES LLP
18                        BY: L. SCOTT OLIVER, ESQ.

19                         for Meru Networks, Inc. and Brocade
                           Communications Systems Inc.
20
                          PHILLIPS, GOLDMAN & SPENCE, P.A.
21                        BY: JOHN C. PHILLIPS, JR., ESQ.

22                        -and-

23                        MCKENNA LONG & ALDRIDGE LLP
                          BY: LORA A. BRZEZYNSKI, ESQ.
24
                           for Adtran Inc.
```

1          THE COURT:  Good afternoon,

2    everyone.  This is Judge Stark.  Who's there,

3    please?

4          MR. FARNAN:  Good afternoon, Your

5    Honor.  This is Brian Farnan on behalf of the

6    plaintiff.  And with me is Brian Ledahl and Paul

7    Kroeger from Russ August & Kabat in Los Angeles,

8    California.

9          MR. FLYNN:  Good afternoon, Your

10   Honor.  This is Michael Flynn from Morris

11   Nichols.  I have with me on the line Matt Gaudet

12   from Duane Morris on behalf of Aruba Networks,

13   Cisco Systems, and Meraki.  And from Irell &

14   Manella, Timothy Heggem and Doug Dixon on behalf

15   of Juniper Networks.

16         MR. HORWITZ:  Good afternoon, Your

17   Honor.  It's Rich Horwitz of Potter Anderson on

18   behalf of Meru and Brocade.  And with me is

19   Scott Oliver from K & L Gates.

20         MR. PHILLIPS:  Good afternoon, Your

21   Honor.  This is Jack Phillips, and with me on

22   the line is Lora Brzezynski on behalf of Adtran.

23         THE COURT: Okay.  Anybody else

24   there?  Okay.

1              Mr. Farnan, are you there?

2              MR. FARNAN:  Yes, Your Honor.

3              THE COURT:  And it sounds as if

4    Mr. Phillips dropped off.  Is everybody else

5    still there?

6              MR. FLYNN:  Yes, Your Honor.

7              MR. HORWITZ:  Yes, Your Honor.

8              THE COURT:  Okay.  All right.

9              Mr. Farnan, do you believe there's

10   anybody else on the call?

11             MR. FARNAN:  No.  I'm sorry, Your

12   Honor.  That's everybody.

13             THE COURT:  Okay.  All right.  I

14   have my court reporter here with me, and we're

15   here on a number of related ReefEdge Networks,

16   LLC cases, one of which is versus Juniper

17   Networks Inc..  That one has Civil Action Number

18   13-412-LPS.  I'm not going to get into all of

19   the other -- is that Mr. Phillips?

20             Mr. Farnan, are you still there?

21             MR. FARNAN:  I think that was

22   Mr. Phillips appearing and then disappearing.

23             THE COURT:  Okay.  Everyone else

24   still there?

1      MR. HORWITZ:  Yes, Your Honor.

2      MR. FLYNN:  Yes, Your Honor.

3      MS. BRZEZYNSKI:  Yes, Your Honor.

4      THE COURT:  All right.  Well, we're

5  going forward then.  Anyway, we're here on a

6  number of discovery issues.  I want to start

7  first with the request from defendants asking

8  that the Court overrule ReefEdge's assertion of

9  common interest privilege.  This came up in

10  relation to the deposition of a Mr. Dodd.

11      So let me hear first from the

12  defendants.  And start with whether or not you

13  have meaningfully met and conferred on this

14  issue, please.

15      MR. DIXON:  Your Honor, this is

16  Doug Dixon from Irell & Manella.  I will be

17  addressing the issue with respect to whether the

18  parties have met and conferred, and my colleague

19  Tim Heggem will be addressing the substantive

20  issues with respect to this motion.

21      THE COURT:  Okay.  Go ahead,

22  Mr. Dixon.

23      MR. DIXON:  Thank you, Your Honor.

24  Three points about ReefEdge's complaints with

1     respect to the meet and confer process.  First,

2     Your Honor, it is defendants' position that we

3     absolutely met and conferred on this issue.

4     This issue fully ripened during Mr. Dodd's

5     deposition, and certainly by the close of the

6     deposition it was clear the parties had reached

7     an impasse.

8               The defendants explicitly

9     indicated on the record that we were holding the

10    deposition open to allow the Court to address

11    what we believed were the improper instructions

12    not to answer certain questions.  And when we

13    stated that, counsel for ReefEdge said

14    explicitly to us, just to quote here, I believe

15    he said that he invited us to read the case law

16    that he had vaguely referred to during the

17    course of the deposition but said that's okay.

18    We took that to mean that, indeed, the parties

19    had reached an impasse.  Again, we intended to

20    raise it with Your Honor.

21              Then on June 24th, Your Honor, the

22    Tuesday of this week during a meet and confer

23    with the parties, we again raise the issue to

24    inquire whether the plaintiff had changed its

1    position.  We were informed that plaintiff had

2    not changed its position and that we were

3    definitely at an impasse on this issue.

4            Moreover, Your Honor, we did ask

5    and explicitly raise whether there was any

6    issues with respect to the meet and confer

7    process, and I believe Counsel's response was

8    that we could consider any meet and confer

9    obligation as having been satisfied.  So we

10    fully met and conferred on two occasions, we

11    believe, with respect to this issue.

12            It wasn't until approximately 9:00

13    p.m. on the evening before the discovery briefs

14    were due that we received an e-mail from

15    ReefEdge with the cases and suggesting that we

16    begin the meet and confer process.  We did

17    respond to that correspondence, and plaintiff's

18    counsel has included that as an exhibit in their

19    filing.  I believe that's Farnan Exhibit 1.

20            And we responded to that and, in

21    fact, said we believe that the meet and confer

22    process had run its course, but if they believe

23    that further discussion could be fruitful, we

24    accepted that and offered to further discuss

1      this issue.  We have not heard back from

2      ReefEdge since indicating that we would welcome

3      opportunity to further discuss this issue.

4              Second point, Your Honor, is this

5      dispute is fully ripe for a decision by the

6      Court.  It's fully briefed and ReefEdge has not

7      at any time indicated or identified how further

8      discussions might in any way be fruitful.  We

9      understand the parties to be at an impasse and

10     that ReefEdge is refusing to reproduce Mr. Dodd

11     at this time.

12             Finally, Your Honor, the third

13     point is simply to the extent that Your Honor

14     believes that the case cited in a footnote by

15     ReefEdge is in any way persuasive with respect

16     to this issue.  Our position is that it is in

17     opposite.  The nature of the dispute in that

18     case, it's *Intellectual Ventures v. Altera*

19     *Corp.*, is materially different.

20             The issue in that case is whether

21     a plaintiff should be given additional time with

22     a defendant's 30(b)(6) witness.  Here the issue

23     is whether counsel's instructions not to answer

24     questions on the basis of a common interest

1    privilege were proper.

2         Moreover, Your Honor, the dispute

3    in that Intellectual Ventures case, as I believe

4    Your Honor recognized during oral argument, may

5    not have been ripe for court intervention.  The

6    nonmoving party in that particular instance had

7    indicated some willingness to discuss the issue

8    with the moving party, but because the moving

9    party waited to raise its complaints until only

10   twenty-four hours before filing the discovery

11   letter, and something like two months after the

12   deposition had taken place, there was never an

13   opportunity to discuss that issue.

14        Here the parties have confirmed on

15   multiple occasions that they are at an impasse.

16   This issue is fully briefed, and we believe it

17   to be ripe for a decision by Your Honor.

18        THE COURT:  All right.  A few

19   questions, Mr. Dixon.  First, in your initial

20   comments, I think you said that in connection

21   with the June 24th discussion the plaintiffs

22   represented to you that their view was that the

23   meet and confer obligation had been satisfied.

24   Help me understand that better.  Is there an

1      e-mail or anything, or who said that?

2                 MR. DIXON:  Yes, Your Honor.  So on

3      that phone call not only did we ask if plaintiff

4      maintained its position, but we explicitly --

5      this was an oral conversation, Your Honor -- we

6      explicitly raised the meet and confer issue.

7      And Mr. Kroeger was on the other line.  I could

8      not possibly quote his exact statement, but the

9      meet and confer obligation was raised, and the

10     parties agreed that it had been met.

11                 I did not believe there was any

12     dispute or any question about that until I

13     received the e-mail from a different attorney, a

14     Mr. Andrew Weiss, over twenty-four hours later

15     at approximately 9:00 p.m. the following

16     evening.

17                 THE COURT:  All right.  Not

18     withstanding that, the plaintiff says in their

19     letter to me that your letter is the first time

20     they came to understand certain aspects of what

21     it is you were complaining about, your

22     understanding of the scope of the common

23     interest privilege, and the specific relief you

24     were seeking.  Are they correct that those are

1      the first time those details were conveyed to

2      them?

3                  MR. DIXON:  I'm sure that there are

4      additional details, Your Honor, that are

5      contained in our discovery brief that may not

6      have been fully discussed during the meet and

7      confer process.  I think what happened during

8      the meet and confer process was, as we

9      understand it, was the parties had discussed

10     that there had been an impasse reached.  Both

11     parties had indicated that they were unwilling

12     to move on the issue, and, therefore, there was

13     no further discussion.

14                 It was not my understanding --

15     they had not identified the cases by that time.

16     They had not sent them to us.  But I believe

17     during the course of the deposition, it was

18     abundantly clear that plaintiff -- the basis for

19     their position was the common interest

20     privilege, and we stated explicitly, as well,

21     that we did not believe that the common interest

22     privilege applied in those circumstances.

23                 THE COURT:  All right.  Let me hear

24     from the plaintiff on this meet and confer

1    question, please.

2                MR. LEDAHL:  Thank you, Your Honor.

3    It's Brian Ledahl from Russ August & Kabat.  I'm

4    going to speak to this, although, Mr. Kroeger,

5    who participated in some of those communications

6    is also on the line.

7                But I think the communication that

8    Mr. Dixon characterized as the meet and confer

9    did not contain, for example, any citation of

10   authority that the defendants are relying on

11   here or, indeed, even an identification of

12   precisely which questions and answers we're

13   talking about.  And I don't think there's a

14   dispute about that.

15               Obviously, Mr. Kroeger has a

16   declaration that's in the record, and the

17   correspondence is in the record.  Mr. Dixon

18   didn't point to anything that suggests

19   otherwise.  I think certainly it's the case that

20   -- I mean, objections were asserted during the

21   deposition.  I believe Mr. Dixon, and this was

22   clear in the record, asks about the basis for

23   those objections.

24               And Mr. Weiss, who was attending

1     and defending the deposition, stated the basis

2     and, indeed, identified some case authority on

3     the record.  At no time did defendants undertake

4     to discuss either that authority or suggest that

5     they believed there was contrary authority; but

6     nor do they, as I indicated, go into the

7     particulars of what it is they believed they

8     were entitled to answers on, why the authorities

9     didn't apply, or any other particulars of what

10    relief they were seeking.

11                   I think, as I said, Mr. Kroeger

12    has a declaration about the conversation on the

13    24th, which I believe, as it's stated in the

14    declaration, mostly turned on other issues that

15    were the subject of disputes, and, indeed, I

16    think some of them were the subject of

17    plaintiff's letter to the Court about discovery

18    issues.

19                   The only issue about the

20    deposition was a question from defense counsel

21    that essentially asked, Having heard nothing

22    from defendants, are you still maintaining the

23    objection you asserted at the deposition?  Well,

24    understandably, the answer is going to be yes in

1   that circumstance since defendants had offered

2   nothing to explain the basis of their position

3   and that those instructions were improper.

4          From our perspective, that's not

5   really, I think, consistent with the Court's

6   rules and instructions seeking to have a

7   meaningful conference of counsel in an attempt

8   to make a good faith effort to either narrow or

9   resolve disputes wherever possible.  I think

10  this was a situation in which the defendants

11  asked their questions, they received objections,

12  and they moved forward without really exploring

13  the details of trying -- even if not all of the

14  disputes could be resolved -- to focus those

15  issues a little more clearly.

16         I think, as we state in our

17  letter, the first time defendants even

18  identified precisely which questions they sought

19  the Court's assistance on was in the letter they

20  sent to the Court.  And I would say, as to

21  Mr. Dixon's last point, that they invited

22  further conference among the parties after

23  Mr. Weiss sent copies, in addition to having

24  raised these cases during the deposition.

```
 1                    They sent that offer at basically

 2        the same time they filed their letter with the

 3        Court.  And so I'm not sure which they wanted us

 4        to pursue.  But it seems to me that once they

 5        filed a motion, it's unclear what meeting and

 6        conferring is going to be done and what time

 7        scale we're talking about.

 8                    THE COURT:  Mr. Ledahl, were you on

 9        this call on June 24?

10                    MR. LEDAHL:  I was not, Your Honor.

11        Mr. Kroeger, who is also on the line, was on

12        that call.  And as I noted, there's a

13        declaration from Mr. Kroeger in the exhibits.  I

14        believe it's Exhibit 3 to the plaintiff's

15        letter.

16                    THE COURT:  Right.  Well, let me

17        ask Mr. Kroeger.  I have the declaration here,

18        but I now have Mr. Dixon's representation that

19        Mr. Kroeger effectively said that meeting and

20        conferring had been satisfied on that call.

21                    Mr. Kroeger, what's your response

22        to that?

23                    MR. KROEGER:  Yes, Your Honor.  In

24        advance of that call, I exchanged correspondence
```

1    with the defendants framing the issues, reasons

2    as to raising the call, and requested the

3    defendants advise me if they intend to raise any

4    issues.  No such issues were raised.

5                    The call was about an hour long.

6    Most of it concerned the statutes and ReefEdge's

7    lenders.  At the very end of the call, I was

8    asked by counsel for Juniper -- something to the

9    effect of has ReefEdge's position changed from

10   the privilege objections that were asserted

11   during Mr. Dodd's depo, and I said I was not at

12   issue about that, but I said you should assume

13   ReefEdge's positions are the same.  And that was

14   it.

15                   Any representation I made about

16   the meet and confer being complete -- and I

17   don't recall making any of those here today --

18   but that would have been solely with regards to

19   what was in the e-mail letters.  That was the

20   subject matter of the call that we had.

21                   THE COURT:  All right.  Thank you.

22                   MR. DIXON:  Your Honor, may I

23   respond to that?

24                   THE COURT:  In a second.

```
 1              Mr. Ledahl, given where we are,

 2     what would you have me do?  I mean, I guess you

 3     want me just to make the whole issue go away and

 4     deny their request.  But if I'm not going to do

 5     that, what would you have me do at this point

 6     Mr. Ledahl?

 7              MR. LEDAHL:  Thank you, Your Honor.

 8     I think, obviously, as you stated, that our

 9     preference would be that this is not similar to

10     the way the Court addressed the issues in the

11     Ventures matter that was cited in the papers.

12     That would be an appropriate outcome here as

13     well.

14              However, I think it seems to me

15     that part of the problem with this -- and I'm

16     not sure that this is a particularly great

17     resolution -- but part of the problem here, and

18     it speaks more to the merits, is that the

19     questions that we're talking about, when we look

20     at them, it's really very hard for me to unpack

21     how they're not addressing privileged subject

22     matter, even if you look at defendants' view of

23     these issues.

24              And so I think part of the problem
```

1       is I don't know what it is that defendants are

2       proposing or might propose as a possible remedy,

3       but the questions and answers that they've

4       addressed don't seem to me to be viable and

5       appropriate questions.

6                    And I don't know that a meet and

7       confer process would yield some possible outcome

8       that we might agree to because I don't know

9       what, if anything, they might be willing to

10      propose as a compromise.  To my knowledge, no

11      compromise was proposed by the defendants.  And

12      it's difficult to speculate about where a meet

13      and confer process might lead.

14                   I can imagine, for example, that

15      if there are particular facts that defendants

16      want to get into rather than delving just into

17      communications for the sake of communications,

18      it might be possible to provide some -- you

19      know, whether it's in the form of an

20      interrogatory or some kind of answer that would

21      clarify some fact that defendants were seeking

22      that didn't necessarily implicate the protected

23      communications.  But of course, there was no

24      opportunity to explore those kinds of issues.

1         THE COURT:  All right.  Thank you.

2    Mr. Dixon, back to you.  You can respond if you

3    wish.

4         MR. DIXON:  Yes, Your Honor.  Just

5    a few quick points.  The first is with respect

6    to whether there is an understanding if the meet

7    and confer process had run its course at the

8    meet and confer on June 24th.  There are several

9    others on this call that also participated on

10   that call, and I do not believe I am alone in my

11   recollection that, indeed, it was explicitly

12   discussed whether the meet and confer process

13   was respected.  This issue had run its course,

14   and it was plaintiff's position that it had.

15        I, again, do not recall the exact

16   words, and I'm not suggesting in any way that

17   anyone is stating necessarily to the contrary,

18   but that is my memory, and I believe there are

19   others on this call that also have that

20   recollection.

21        With respect to the questions

22   we're talking about, I believe there's some

23   concern that this was the first instance in

24   which the plaintiff had an understanding with

1    respect to which questions we took issue with.

2    Your Honor, we made it very clear during the

3    deposition.  These were not objections that

4    plaintiffs voiced.  These were instructions not

5    to answer questions.  And in each instance, we

6    indicated that we disagreed.  We explored the

7    basis for that objection, and we indicated that

8    we disagreed that the common interest privilege

9    protected a response -- a full response -- a

10   response to that question.  So there can be no

11   question over which questions were at issue.

12              Moreover, Your Honor, the last

13   point I just want to make is with respect to the

14   authority.  Counsel for ReefEdge during the

15   deposition made passing reference to -- I

16   believe it was two cases.  They did not provide

17   those cases to us, they did not provide

18   citations to those cases to us, and we did not

19   receive them until many days later.

20              We were able to -- on our own,

21   after some searching, we were able to locate

22   those cases, but it's not as if plaintiff had

23   provided those cases to us in a manner in which

24   we could consider them fully during the

1    deposition.  But based upon plaintiff's

2    counsel's description of its understanding of

3    the law, we knew that we disagreed, and we

4    believe that their interpretation was incorrect.

5                   THE COURT:  All right.  Thank you.

6    Well, it's not entirely clear to me whether the

7    meet and confer here was adequate or not.  I'm

8    certainly accepting everybody's representations.

9    I don't mean in any way to suggest that I don't

10   believe everything that you all have told me,

11   but it leaves it a bit unclear as to whether or

12   not a fuller effort to talk this over might have

13   led to some narrowing or possibly even some

14   resolution of the issue.

15                   I'm not inclined, though, to spend

16   more time trying to get to the bottom of the

17   history as to how we got here.  I think we've

18   explored that enough.  Nonetheless, I don't

19   believe that I am in a position at which I can

20   resolve or should resolve this issue.  There's a

21   couple reasons for that.

22                   One is because I do have a tiny

23   bit of hope that a further and fuller meet and

24   confer might narrow or resolve the issue now

1      that it's very clear what both sides' positions

2      are with respect to the application of the

3      common interest privilege; now that it's clear

4      precisely what relief that the defendants are

5      seeking; now that the authority that the

6      plaintiff was relying on, and presumably is

7      still relying on, is out there.

8              I think there is clearly the basis

9      for further discussion, and I'm going to order

10     that you have that further discussion.  I do

11     that rather than say that this issue is

12     basically waived, first because I'm not sure

13     that the meet and confer here was inadequate,

14     and, in any event, the issue on the merits as to

15     the application of the common interest privilege

16     is a very important issue, and it's one I think

17     is somewhat difficult.  And so I think the

18     further discussions will be helpful.

19             I instruct that you consider

20     whether there is some type of relief other than

21     a further deposition.  Perhaps an interrogatory

22     or something like that may help resolve the

23     issue.  And if you can't reach a resolution,

24     then I'm going to need further and full briefing

1    on the application of the common interest

2    privilege to the circumstances here.  The

3    authorities that have been cited, at least

4    predominantly if not exclusively, are cases of

5    mine.  I'm not clear whether any other judge in

6    this or any other court has gone in the same way

7    as I have.

8              There's the dispute as to whether

9    Teleglobe is limited to communications between

10   attorneys.  There's the dispute as to whether

11   these communications were in furtherance of

12   legal advice or not.  And all of that I'm going

13   to need full briefing on in order to make an

14   appropriate resolution in this case.

15             So all that said, the direction in

16   the order is that the parties meet and confer

17   and let me know by Monday of next week whether

18   you've resolved the issue.  And if you haven't,

19   then plaintiff should file the motion for a

20   protective order.  The burden is initially on

21   the plaintiff here as the party seeking to

22   prevent the discovery.  And so let me know by

23   Monday what the timing is that you've all worked

24   out for that motion for protective order to be

1     filed and on what schedule it will be briefed,

2     and we'll take it from there.

3                    Any questions about that,

4     Mr. Dixon?

5                    MR. DIXON:  No, Your Honor.  I just

6     do want to flag an issue for Your Honor.  We

7     have subpoenaed IP Navigation to take its

8     deposition.  We do expect that probably similar

9     issues, privilege issues and instructions not to

10    answer, will arise in connection with that

11    deposition as well.  But I just wanted to

12    indicate that that is another potential instance

13    where this issue may come up and on the horizon.

14                   THE COURT:  Okay.  Thank you.

15                    Mr. Ledahl?

16                   MR. LEDAHL:  No, Your Honor.  We

17    appreciate your time on this issue, and we'll

18    obviously follow up as you suggested.

19                   THE COURT:  Okay.  All right.

20                   MR. GAUDET:  Your Honor?

21                   THE COURT:  Yes?

22                   MR. GAUDET:  Your Honor, this is

23    Matt Gaudet for Cisco, and I just wanted to put

24    one other thing on the record while we're

1      talking about this issue.  And it's a somewhat

2      related but distinct issue that's not yet ripe.

3      But in light of your order and in light of where

4      things may play out, I'm just want to go and get

5      this on the record so we're all clear on this.

6      Let me be more specific about this.

7                At that Dodd deposition, Cisco

8      learned for the first time some facts about the

9      relationship between ReefEdge, the plaintiff in

10     this case, and IP Nav. and, you know, the

11     communications between those two parties and

12     whatever issue and the common interest

13     privilege.  But we learned testimony, and the

14     results of the un-redacted agreement between

15     those two companies was produced for the first

16     time the night before the second day of the

17     deposition.

18                Based on what we learned about ten

19     days ago, Cisco believes that it has a license

20     defense that's actually a complete defense to

21     this case based on a previous agreement between

22     Cisco and IP Nav. that we just started literally

23     in the last day because this is all is late

24     breaking news.

1          The meet and confer process seeks

2     to add a license defense to the case based on

3     this new discovered fact.  I'm bringing that up

4     because we've got to figure out with the witness

5     discovery that's involved where all this leaves

6     us, but a key issue in that defense will likely

7     be the extent to which IP Nav. indirectly

8     controls the operations, policies, and decisions

9     of ReefEdge.  And probably some of the best

10    proof on that are these very same

11    communications.

12          So I raise that issue, though it's

13    not ripe at all right now, but I raise that

14    simply because, number one, I don't think we're

15    going to be able to even figure out how that's

16    going to play out between now and Monday.

17    Hopefully, we'll never come back to you and tell

18    you a new discovery dispute in light of today.

19    But if there is, I just kind of wanted to

20    quickly raise this flag, so to speak, so that

21    you don't think you have to decide that unique

22    issue, although it relates very much to the

23    communications.

24          THE COURT:  Okay.  Well, you've

1    made that clear at this point.  I only have

2    maybe fifteen minutes left, and there's

3    plaintiff's issues, so I want to move on to

4    those.

5              First is plaintiff is seeking

6    these defense contacts with third parties.  And

7    let me say just to try to move things along, I'm

8    inclined to deny this request.  Some of the

9    concerns raised by the defendants in their

10   letter seem like legitimate concerns, but

11   whoever is going to speak for the plaintiff, go

12   ahead and tell me why that's wrong.

13             MR. KROEGER:  Thank you, Your

14   Honor.  This is Paul Kroeger.  To be clear, all

15   we're seeking is that they identify the names of

16   third-party witnesses with relevant information

17   and the facts they learned from those witnesses.

18   We don't think that information in and of itself

19   is the work product.  We're not seeking their

20   mental impressions.  We're not taking notes of

21   the conversations.  We're simply seeking the

22   identity of those people and the facts learned.

23             This is very similar to the

24   information the defendants sought from us when

1    they sought information about reduction and

2    conception to practice.  The only facts we had

3    were from a person who at that time was the

4    assigned consultant, Sandeep Singhal, who told

5    us that they may been reduced to the practice a

6    few months prior to the filing date, and we were

7    required to divulge that information.  We think

8    it's no different here.  With that being said --

9         THE COURT:  Mr. Kroeger, let me

10   interrupt.  So they say they will give you that,

11   as I understand it, with respect to any third

12   party who produces documents or will provide

13   testimony.  Why isn't that enough?

14        MR. KROEGER:  I guess we asked them

15   if they were going to do that with regards to

16   this Rule 7 and they said no.  So we weren't

17   clear exactly what the scope of that information

18   is.

19        THE COURT:  Let me see if I've

20   misunderstood them.  Who's speaking for the

21   defendants on this?

22        MR. GAUDET:  Your Honor, this is

23   Matt Gaudet again for the defendants on this.

24   And your understanding is exactly right.  I know

1    in the case with Cisco we've already done it

2    that with respect to any witness that we might

3    rely on, we identified them, and we did it with

4    plenty of time for them to take their deposition

5    if they want to do that.  But the open-ended

6    narrative of everybody we've ever talked to and

7    what it is they might have said, we think that's

8    well beyond the bounds of discovery.

9              THE COURT:  So Mr. Gaudet, on

10   behalf of all defendants -- this is how I read

11   your letter -- you're agreeing that if any third

12   party with whom any of the defendants have had

13   contact is producing documents or giving

14   testimony in this case, then unless there's some

15   attorney-client privilege, you will provide the

16   name of that individual, and you'll allow

17   discovery even into the communications with that

18   individual; is that right?

19             MR. GAUDET:  That's correct.  And

20   the only point I want to be clear about in the

21   end is discovery meaning they can go take their

22   deposition, and they can ask them everything

23   they want to ask about specific questions about

24   anything the witness ever said to us.  We

1  wouldn't do a long narrative discussion of

2  communications, but absolutely they can take the

3  deposition, and we're not going to instruct -- I

4  mean, absent some independent basis -- we

5  wouldn't instruct on this basis for that witness

6  not to answer questions.

7            THE COURT:  Mr. Kroeger, does that

8  take care of it?

9            MR. KROEGER:  The only issue we

10  have is that the defendants -- we found a

11  witness with relevant info that they don't like,

12  and we don't think that they should be able to

13  cherry pick what they disclose.  But in terms of

14  people they've identified, as long as they're

15  willing to supplement our responses -- because

16  we have interrogatory responses out there -- I

17  think that would be sufficient.

18            THE COURT:  Mr. Gaudet, your

19  response?

20            MR. GAUDET:  Your Honor, that's

21  following kind of work product doctrine rule.  I

22  mean, the plaintiffs can go out and work their

23  own case.  And if they find things they like

24  that's great.  Otherwise, that's fine, too.  But

1    that goes to the very essence of who all have

2    the defendants talked to, what did they say,

3    what did they not say.  It opens up an entirely

4    different can of worms that we think would

5    fundamentally be at odds with the work product

6    doctrine.

7              THE COURT:  So Mr. Gaudet, if you

8    have had contact with a third party and you

9    don't like what you've heard from them but you

10   don't produce any documents or any testimony

11   from that individual, then your view is that

12   that person is for the plaintiff to find and

13   otherwise is not discoverable from defendants;

14   is that right?

15             MR. GAUDET:  That's right.  It is

16   in essence the equivalent of privilege log of

17   everybody that we've talked to, which then the

18   local rules specifically say that we don't have

19   to do.  And beyond that, Your Honor, it would be

20   -- they're saying it's people we don't like.  I

21   mean, what they would wind up with, it's not

22   under the category of helpful testimony and

23   unhelpful testimony.  They would simply wind up

24   with the list of everybody that we have spoken

1    to in investigating this case beginning to end

2    and regardless of characterization.

3                   THE COURT:  Okay.  Thank you.

4                   Mr. Kroeger, anything further on

5    this one?

6                   MR. KROEGER:  I guess we're only

7    saying people with relevant information.  This

8    isn't anyone that they've discussed, only third

9    party relevant information.  And I think the

10   analogy of privilege log doesn't hold because we

11   had privilege logs for certain documents.  We,

12   at least, had to identify the author and the

13   general subject matter of the conversation.

14   That's all we're requesting here.

15                  THE COURT:  All right.  Well, I'm

16   in agreement with the defendants on this one.  I

17   think what they have proposed to provide, and I

18   hereby order that they will provide consistent

19   with the representation, is adequate and is an

20   adequate response to the very broad and general

21   interrogatory that the plaintiffs are seeking to

22   enforce.

23                  So let's turn just in our

24   remaining minutes to the disputes between

1    plaintiff and Juniper, which go to

2    damages-related discovery.  I'll give plaintiff

3    a couple minutes just to touch on the categories

4    of things you're looking for.  And tell me how

5    they are relevant, and why I should order their

6    production.

7              MR. KROEGER:  Thank you, Your

8    Honor.  There are roughly three categories of

9    documents.  The first is Juniper acquired these

10   accused products through a merger with a company

11   called Trapeze.  Juniper agreed to produce the

12   Trapeze agreement, but it held the schedules.

13              Some of these schedules, based on

14   what you can read from the documents, include

15   the intellectual property that they acquired and

16   possible valuations relating to the property,

17   such as one of the access points in dispute.

18   Juniper never claimed any burden with producing

19   these, and we think they should be produced

20   because they potentially have relevant

21   information.

22              THE COURT:  Help me, Mr. Kroeger,

23   understand what's the relevance of the value of

24   the Trapeze intellectual property to a case

1        that's about your intellectual property?

2                    MR. KROEGER:  Well, Your Honor,

3        this would go to essentially the valuation

4        placed on the features of the accused products.

5        So these are going to force specific features in

6        the accused products, in particular, seamless

7        roaming.  The valuations that we think either

8        Trapeze or Juniper placed on them could be very

9        relevant to damages and the amounts one would

10       pay in line with that negotiation.

11                   THE COURT:  Now, they say they've

12       already produced a lot of financial data to you,

13       including all of the actual sales of the accused

14       product and that sort of information.  Why isn't

15       that enough?

16                   MR. KROEGER:  Well, Your Honor, we

17       would like to see the information as it was kept

18       in the ordinary course of business.  And

19       regardless, we think that the merger agreement

20       is incomplete without the schedules, at least

21       the relevant schedules.  I know there are a lot

22       of the irrelevant schedules, such as things

23       related to employee agreements, but we think the

24       schedules related to the wireless roaming

1    product should definitely be produced.

2              THE COURT:  Okay.  And in one of

3    the other categories I think you're seeking

4    forecasts.  What's the relevance of forecast

5    financial data as opposed to actual results?

6              MR. KROEGER:  This, again, goes do

7    the benefits of the accused features.  Juniper

8    acquired these products from Trapeze because

9    they have the patented features and then

10   attempted to market them themselves and

11   developed them themselves.  And ultimately, it

12   ended up being a failure, but we think that the

13   information on forecasts could prove relevant to

14   what the developing of those features were and

15   what they're worth.

16             THE COURT:  All right.  Thank you.

17   Let me hear from Juniper, please.

18             MR. DIXON:  Thank you, Your Honor.

19   This is Doug Dixon for Juniper.  I think Your

20   Honor hit the nail on the head.  This is about

21   ReefEdge's intellectual property, not Trapeze's.

22   I think counsel, when pressed to identify how

23   Trapeze's intellectual property could be

24   relevant, I think what I heard him say is that

1    perhaps there would be something about valuation

2    of the accused features in the specific

3    documents.  Your Honor, this is am acquisition

4    of an entire company.  There is nothing in these

5    documents valuing the specific features,

6    particularly these accused features at issue in

7    this case.  That's not the way this acquisition

8    worked.

9              They have the price of this

10   acquisition.  It was $152 million.  They've got

11   the agreement itself, which is what we agreed to

12   produce.  They had that for three months before

13   they raised any concerns with it.

14             Also, Your Honor, with respect to

15   forecasts, forecasts, again, here these are just

16   numbers.  They have nothing to do with features.

17   They're numbers based on a quarterly or annual

18   basis.  It does not get into a product-level

19   detail at all with respect to revenue forecasts.

20             So I'm not sure how there's a

21   connection between the forecasts that plaintiffs

22   are seeking and the accused features.  I'm not

23   sure what the connection was if plaintiff

24   identified one.

1          THE COURT:  Have you produced all

2     of the relevant actual financial results, and

3     are you only withholding forecasts, Mr. Dixon?

4          MR. DIXON:  Your Honor, we have

5     produced detailed sales data since Juniper

6     acquired Trapeze Networks.  We are having some

7     difficulty locating the detailed sales data that

8     ReefEdge has asked for with respect to sales

9     prior to the acquisition.

10          The issue is we do have sales data

11     on a worldwide basis and by a quarterly basis

12     for certain accused products, but we do not have

13     it at the detail ReefEdge has requested.  We're

14     searching for that, and we are trying to find if

15     Juniper ever acquired that level of detail that

16     ReefEdge has requested.  But today, despite

17     extensive searches, Your Honor, we have been

18     unable to find it.

19          THE COURT:  And Mr. Dixon, in the

20     letter at least, ReefEdge asserts that you're

21     depriving them of discovery into the date of

22     first infringement so they can't figure out the

23     date of the hypothetical negotiation.  And at a

24     minimum, this handcuffs them in articulating the

1    relevance of some of what they're seeking.

2    What's your response to that?

3                 MR. DIXON:  Thank you, Your Honor.

4    I would like to address that.  Your Honor, we

5    have produced information from which ReefEdge

6    could determine when Trapeze may have begun

7    infringing or using the features or

8    functionality that they're accusing of an

9    infringement, and I can identify at least two

10   examples.

11                The first is the source code, Your

12   Honor.  We have made our source code available

13   to ReefEdge on at least two separate occasions.

14   ReefEdge has made multi-day trips to come look

15   at our source code.  The source code often

16   indicates the burden in our base when certain

17   features were added.  So I believe they could

18   certainly obtain information about when those

19   features were added, one from the source code.

20                But two, as a completely separate

21   basis from which they could obtain information

22   about when features or functionality were added,

23   we produced numerous documents, technical

24   documents, that discussed the features of the

1   accused products going all the way back to the

2   early to mid 2000s.  We have hundreds and

3   hundreds of documents in our production that

4   talk about the features of the accused products,

5   and maybe even specifically refer to some of the

6   functionality that they're accusing of

7   infringement.

8          And so I disagree with their

9   contention that we have been withholding any

10  discovery.  One, we have not withheld any

11  discovery; and two, the discovery that we have

12  produced certainly identifies dates on which

13  these types of features that are accused of

14  infringement were used in the products.

15          THE COURT:  All right.  Thank you.

16          Mr. Kroeger, you can respond.

17          MR. KROEGER:  Just a couple of

18  brief points, Your Honor.  Our understanding

19  based off the deposition testimony that's been

20  taken is that the forecasts and the sales that

21  we're seeking are all in the same reports.  As

22  you can understand it, we're seeking separate

23  forecast reports and, simply, that information's

24  combined.

```
 1              I'd also just like to note that

 2    comparable licenses, especially what was paid to

 3    Trapeze, would be one of the relevant

 4    Georgi-Pacific factors for damages, which is why

 5    we want that information.  And in terms of

 6    information they provided to us regarding sales,

 7    that comes primarily from an interrogatory

 8    response that goes back to 2011.  That's why we

 9    want to see the Trapeze agreement which predates

10    that, so we can try to learn more about the date

11    of first infringement.

12              THE COURT:  All right.  Mr. Dixon,

13    very briefly because Mr. Kroeger points out -- I

14    guess I am still confused on whether some of

15    these documents, I think it's the WLAN ones, if

16    they contain actual as well as forecast data,

17    are you providing the actual data to the

18    plaintiff?

19              MR. DIXON:  Your Honor, we have

20    provided the actual data on a transaction by

21    transaction basis.  Detailed sales data that

22    includes the customer, the date of sale, and I

23    believe it also identifies the cost of goods

24    sold.  It's very detailed actual sales data.
```

1          ReefEdge had requested very

2     specific sales data, and that doesn't exist in a

3     preexisting document.  So we had to go to a

4     database and pull this information for them, and

5     then we produced it to them both in a regular

6     document, as well as a native format.  The

7     forecast is a separate document.  The forecast

8     is a document that identifies what Juniper was

9     forecasting it's revenue may be in future

10    quarters.

11         THE COURT:  All right.  And what

12    about the comparable licenses point?  Why

13    shouldn't we view Trapeze as comparable and a

14    reasonable input into a Georgia-Pacific

15    analysis?

16         MR. DIXON:  I guess if ReefEdge is

17    referring to the Trapeze acquisition, what we

18    paid for Trapeze that was unclear to me --

19         THE COURT:  Go ahead.

20         MR. DIXON:  If that's what he's

21    getting at -- I'm sorry, Your Honor.  I didn't

22    mean -- is that what he's getting at?

23         THE COURT:  I don't know.

24         Mr. Kroeger, is that what you're

1    getting at?

2              MR. KROEGER:  If you're referring

3    to the schedule attached to the Trapeze

4    agreement, yes, what they paid for Trapeze and

5    the valuation of the intellectual property

6    placed by Trapeze and Juniper at the time.  We

7    think that would all be relevant to the

8    Georgia-Pacific analysis.

9              MR. DIXON:  Okay.  I can address

10   that quickly, Your Honor.  The price is

11   disclosed in the agreement.  It's a matter of

12   public record.  It's $152 million.  There's

13   nothing additional in the schedule that would

14   provide additional insight to the price.  The

15   price is what it is, and they know all about

16   that.  There is no breakdown in the agreement

17   regarding how to value certain segments of the

18   Trapeze business.  There is accounting

19   information -- I'm sorry.  Was I speaking over

20   someone?

21              THE COURT:  No.

22              MR. DIXON:  Okay.  Of course,

23   Juniper also filed documents with the SEC in

24   which Juniper had to disclose certain accounting

```
 1        information, but that's a completely separate

 2        valuation, and the information on that is a

 3        matter of public record and is in our SEC

 4        filings.

 5                    THE COURT:  All right.  Thank you.

 6        Well, having heard the arguments and

 7        representations made on the call from defendants

 8        today and, of course, having looked at the

 9        material submitted before the call, I'm not

10        persuaded that I should order the additional

11        relief for the plaintiff that they're seeking

12        here today.  So their requests are denied.

13                     I base that, in part, on what I

14        understand to be a representation that the

15        actual sales data that the plaintiff is looking

16        for has been or will be provided to the extent

17        it can be found or recreated, that much of that

18        has been provided, and that Juniper continues to

19        look for similar data from the pre-acquisition

20        period and will produce it if it finds it; and

21        the further representation that there are no

22        documents showing a valuation of the accused

23        features or product-level detail other than what

24        has been provided by Juniper to the plaintiff.
```

1          So I'm, at this point, not

2     ordering any additional relief for the

3     plaintiff.  I have to get on another call, but

4     anything I haven't been clear about?  First,

5     from the plaintiff?

6               MR. KROEGER:  No, Your Honor.

7     Thank you.

8               THE COURT:  And then Juniper?

9               MR. DIXON:  No, Your Honor.  Thank

10    you so much.

11              THE COURT:  Any other defendant?

12              MR. HORWITZ:  Your Honor, this is

13    Rich Horwitz.  I'm only commenting that I need

14    to initiate the next call, so it will be a

15    minute before we all get on.

16              THE COURT:  All right.  Then I'll

17    take a breath, and I'll hear from you shortly.

18    Thank you.

19              (The matter concluded at 12:49 p.m.)

20

21

22

23

24

```
1        State of Delaware      )
                                )
2        New Castle County      )

3
                    CERTIFICATE OF REPORTER
4
                I, Justine Kiechel, professional
5        court reporter and Notary Public, do hereby
         certify that I am the court reporter of said
6        Court, duly appointed to report the evidence of
         causes tried therein.
7
             That upon the 1st of July, 2014, I took
8        down, by machine shorthand, all of the
         statements by counsel, the evidence given
9        during the hearing of this cause, objections of
         counsel thereto, and the rulings of the Court
10       upon such objections, the introduction of
         exhibits, the objections thereto, and the
11       Court's rulings thereon.

12           I further certify that the foregoing
         transcript, as prepared, is full, true, correct
13       and complete.

14           WITNESS MY HAND and seal, this 15th day of
         July, 2014.

15

16

17

18                              /s/ Justine C. Kiechel
                                Justine C. Kiechel
19

20

21

22

23

24
```

## $

**$152** [2] - 37:10, 43:12

## 1

**1** [2] - 2:17, 8:19
**12-1042-LPS** [1] - 1:4
**12-1043-LPS** [1] - 1:10
**12-1044-LPS** [1] - 1:15
**12-1143-LPS** [1] - 1:20
**12-1149-LPS** [1] - 2:2
**12-1674-LPS** [1] - 2:8
**12:05** [1] - 2:18
**12:49** [1] - 45:19
**13-412-LPS** [2] - 2:13, 5:18
**15th** [1] - 46:14
**1st** [1] - 46:7

## 2

**2000s** [1] - 40:2
**2011** [1] - 41:8
**2014** [3] - 2:17, 46:7, 46:14
**24** [1] - 16:9
**24th** [4] - 7:21, 10:21, 14:13, 20:8

## 3

**3** [1] - 16:14
**30(b)(6** [1] - 9:22

## 7

**7** [1] - 29:16

## 8

**844** [1] - 2:19

## 9

**9:00** [2] - 8:12, 11:15

## A

**able** [4] - 21:20, 21:21, 27:15, 31:12
**absent** [1] - 31:4
**absolutely** [2] - 7:3, 31:2
**abundantly** [1] - 12:18
**accepted** [1] - 8:24
**accepting** [1] - 22:8
**access** [1] - 34:17
**accounting** [2] - 43:18, 43:24

**accused** [13] - 34:10, 35:4, 35:6, 35:13, 36:7, 37:2, 37:6, 37:22, 38:12, 40:1, 40:4, 40:13, 44:22
**accusing** [2] - 39:8, 40:6
**acquired** [5] - 34:9, 34:15, 36:8, 38:6, 38:15
**acquisition** [6] - 37:3, 37:7, 37:10, 38:9, 42:17, 44:19
**Action** [8] - 1:4, 1:9, 1:14, 1:19, 2:2, 2:7, 2:12, 5:17
**actual** [8] - 35:13, 36:5, 38:2, 41:16, 41:17, 41:20, 41:24, 44:15
**add** [1] - 27:2
**added** [3] - 39:17, 39:19, 39:22
**addition** [1] - 15:23
**additional** [6] - 9:21, 12:4, 43:13, 43:14, 44:10, 45:2
**address** [3] - 7:10, 39:4, 43:9
**addressed** [2] - 18:10, 19:4
**addressing** [3] - 6:17, 6:19, 18:21
**adequate** [3] - 22:7, 33:19, 33:20
**Adtran** [2] - 3:24, 4:22
**ADTRAN** [1] - 1:21
**advance** [1] - 16:24
**advice** [1] - 24:12
**advise** [1] - 17:3
**afternoon** [5] - 4:1, 4:4, 4:9, 4:16, 4:20
**ago** [1] - 26:19
**agree** [1] - 19:8
**agreed** [3] - 11:10, 34:11, 37:11
**agreeing** [1] - 30:11
**agreement** [10] - 26:14, 26:21, 33:16, 34:12, 35:19, 37:11, 41:9, 43:4, 43:11, 43:16
**agreements** [1] - 35:23
**ahead** [3] - 6:21, 28:12, 42:19
**ALDRIDGE** [1] - 3:23
**allow** [2] - 7:10, 30:16
**alone** [1] - 20:10
**Altera** [1] - 9:15

**amounts** [1] - 35:9
**analogy** [1] - 33:10
**analysis** [2] - 42:15, 43:8
**ANDERSON** [1] - 3:15
**Anderson** [1] - 4:17
**Andrew** [1] - 11:14
**Angeles** [1] - 4:7
**annual** [1] - 37:17
**answer** [7] - 7:12, 9:23, 14:24, 19:20, 21:5, 25:10, 31:6
**answers** [3] - 13:12, 14:8, 19:3
**anyway** [1] - 6:5
**APPEARANCES** - 3:1
**appearing** [1] - 5:22
**application** [3] - 23:2, 23:15, 24:1
**applied** [1] - 12:22
**apply** [1] - 14:9
**appointed** [1] - 46:6
**appreciate** [1] - 25:17
**appropriate** [3] - 18:12, 19:5, 24:14
**argument** [1] - 10:4
**arguments** [1] - 44:6
**arise** [1] - 25:10
**ARSHT** [1] - 3:9
**articulating** [1] - 38:24
**ARUBA** [1] - 1:6
**Aruba** [3] - 3:8, 4:12
**aspects** [1] - 11:20
**asserted** [3] - 13:20, 14:23, 17:10
**assertion** [1] - 6:8
**asserts** [1] - 38:20
**assigned** [1] - 29:4
**assistance** [1] - 15:19
**assume** [1] - 17:12
**attached** [1] - 43:3
**attempt** [1] - 15:7
**attempted** [1] - 36:10
**attending** [1] - 13:24
**attorney** [2] - 11:13, 30:15
**attorney-client** - 30:15
**attorneys** [1] - 24:10
**August** [2] - 4:7, 13:3
**AUGUST** [1] - 3:3
**author** [1] - 33:12
**authorities** [2] - 14:8, 24:3
**authority** [6] - 13:10, 14:2, 14:4, 14:5, 21:14, 23:5
**available** [1] - 39:12

## B

**base** [2] - 39:16, 44:13
**based** [7] - 22:1, 26:18, 26:21, 27:2, 34:13, 37:17, 40:19
**basis** [14] - 9:24, 12:18, 13:22, 14:1, 15:2, 21:7, 23:8, 31:4, 31:5, 37:18, 38:11, 39:21, 41:21
**BEFORE** [1] - 2:21
**begin** [1] - 8:16
**beginning** [1] - 33:1
**begun** [1] - 39:6
**behalf** [6] - 4:5, 4:12, 4:14, 4:18, 4:22, 30:10
**believes** [2] - 9:14, 26:19
**benefits** [1] - 36:7
**best** [1] - 27:9
**better** [1] - 10:24
**between** [8] - 24:9, 26:9, 26:11, 26:14, 26:21, 27:16, 33:24, 37:21
**beyond** [2] - 30:8, 32:19
**bit** [2] - 22:11, 22:23
**bottom** [1] - 22:16
**bounds** [1] - 30:8
**breakdown** [1] - 43:16
**breaking** [1] - 26:24
**breath** [1] - 45:17
**BRIAN** [2] - 3:1, 3:4
**Brian** [3] - 4:5, 4:6, 13:3
**brief** [2] - 12:5, 40:18
**briefed** [3] - 9:6, 10:16, 25:1
**briefing** [2] - 23:24, 24:13
**briefly** [1] - 41:13
**briefs** [1] - 8:13
**bringing** [1] - 27:3
**broad** [1] - 33:20
**Brocade** [2] - 3:19, 4:18
**BROCADE** [1] - 2:4
**Brzezynski** [1] - 4:22
**BRZEZYNSKI** [2] - 3:23, 6:3
**burden** [3] - 24:20, 34:18, 39:16
**business** [2] - 35:18, 43:18
**BY** [11] - 3:1, 3:4, 3:4, 3:7, 3:10, 3:12, 3:13, 3:21,

3:23

## C

**California** [1] - 4:8
**care** [1] - 31:8
**case** [17] - 7:15, 9:14, 9:18, 9:20, 10:3, 13:19, 14:2, 24:14, 26:10, 26:21, 27:2, 30:1, 30:14, 31:23, 33:1, 34:24, 37:7
**cases** [10] - 5:16, 8:15, 12:15, 15:24, 21:16, 21:17, 21:18, 21:22, 21:23, 24:4
**Castle** [1] - 46:2
**categories** [3] - 34:3, 34:8, 36:3
**category** [1] - 32:22
**causes** [1] - 46:6
**certain** [7] - 7:12, 11:20, 33:11, 38:12, 39:16, 43:17, 43:24
**certainly** [5] - 7:5, 13:19, 22:8, 39:18, 40:12
**CERTIFICATE** [1] - 46:3
**certify** [2] - 46:5, 46:12
**changed** [3] - 7:24, 8:2, 17:9
**characterization** [1] - 33:2
**characterized** [1] - 13:8
**cherry** [1] - 31:13
**circumstance** [1] - 15:1
**circumstances** [2] - 12:22, 24:2
**Cisco** [7] - 3:8, 4:13, 25:23, 26:7, 26:19, 26:22, 30:1
**CISCO** [1] - 1:11
**citation** [1] - 13:9
**citations** [1] - 21:18
**cited** [3] - 9:14, 18:11, 24:3
**Civil** [8] - 1:4, 1:9, 1:14, 1:19, 2:2, 2:7, 2:12, 5:17
**claimed** [1] - 34:18
**clarify** [1] - 19:21
**clear** [14] - 7:6, 12:18, 13:22, 21:2, 22:6, 23:1, 23:3, 24:5, 26:5, 28:1, 28:14, 29:17, 30:20, 45:4

clearly [2] - 15:15, 23:8

client [1] - 30:15

close [1] - 7:5

code [5] - 39:11, 39:12, 39:15, 39:19

colleague [1] - 6:18

combined [1] - 40:24

commenting [1] - 45:13

comments [1] - 10:20

common [10] - 6:9, 9:24, 11:22, 12:19, 12:21, 21:8, 23:3, 23:15, 24:1, 26:12

communication [1] - 13:7

COMMUNICATIONS [1] - 2:4

communications [11] - 13:5, 19:17, 19:23, 24:9, 24:11, 26:11, 27:11, 27:23, 30:17, 31:2

Communications [1] - 3:19

companies [1] - 26:15

company [2] - 34:10, 37:4

comparable [3] - 41:2, 42:12, 42:13

complaining [1] - 11:21

complaints [2] - 6:24, 10:9

complete [3] - 17:16, 26:20, 46:13

completely [2] - 39:20, 44:1

compromise [2] - 19:10, 19:11

conception [1] - 29:2

concern [1] - 20:23

concerned [1] - 17:6

concerns [3] - 28:9, 28:10, 37:13

concluded [1] - 45:19

confer [24] - 7:1, 7:22, 8:6, 8:8, 8:16, 8:21, 10:23, 11:6, 11:9, 12:7, 12:8, 12:24, 13:8, 17:16, 19:7, 19:13, 20:7, 20:8, 20:12, 22:7, 22:24, 23:13, 24:16, 27:1

conference [2] - 15:7, 15:22

conferred [4] - 6:13, 6:18, 7:3, 8:10

conferring [2] - 16:6,

16:20

confirmed [1] - 10:14

confused [1] - 41:14

connection [4] - 10:20, 25:10, 37:21, 37:23

consider [3] - 8:8, 21:24, 23:19

consistent [2] - 15:5, 33:18

consultant [1] - 29:4

contact [2] - 30:13, 32:8

contacts [1] - 28:6

contain [2] - 13:9, 41:16

contained [1] - 12:5

contention [1] - 40:9

continues [1] - 44:18

contrary [2] - 14:5, 20:17

controls [1] - 27:8

conversation [3] - 11:5, 14:12, 33:13

conversations [1] - 28:21

conveyed [1] - 12:1

copies [1] - 15:23

Corp [1] - 9:19

correct [3] - 11:24, 30:19, 46:12

correspondence [3] - 8:17, 13:17, 16:24

CORROON [1] - 3:15

cost [1] - 41:23

counsel [9] - 7:13, 8:18, 14:20, 15:7, 17:8, 21:14, 36:22, 46:8, 46:9

counsel's [2] - 9:23, 22:2

Counsel's [1] - 8:7

Counterclaimant [2] - 1:12, 1:17

County [1] - 46:2

couple [3] - 22:21, 34:3, 40:17

course [9] - 7:17, 8:22, 12:17, 19:23, 20:7, 20:13, 35:18, 43:22, 44:8

court [5] - 5:14, 10:5, 24:6, 46:5, 46:5

COURT [46] - 1:1, 4:1, 4:23, 5:3, 5:8, 5:13, 5:23, 6:4, 6:21, 10:18, 11:17, 12:23, 16:8, 16:16, 17:21, 17:24, 20:1, 22:5, 25:14, 25:...

27:24, 29:9, 29:19, 30:9, 31:7, 31:18, 32:7, 33:3, 33:15, 34:22, 35:11, 36:2, 36:16, 38:1, 38:19, 40:15, 41:12, 42:11, 42:19, 42:23, 43:21, 44:5, 45:8, 45:11, 45:16

Court [9] - 6:8, 7:10, 9:6, 14:17, 15:20, 16:3, 18:10, 46:6, 46:9

Court's [3] - 15:5, 15:19, 46:11

customer [1] - 41:22

# D

damages [3] - 34:2, 35:9, 41:4

damages-related [1] - 34:2

data [13] - 35:12, 36:5, 38:5, 38:7, 38:10, 41:16, 41:17, 41:20, 41:21, 41:24, 42:2, 44:15, 44:19

database [1] - 42:4

date [5] - 29:6, 38:21, 38:23, 41:10, 41:22

dates [1] - 40:12

days [2] - 21:19, 26:19

decide [1] - 27:21

decision [2] - 9:5, 10:17

decisions [1] - 27:8

declaration [5] - 13:16, 14:12, 14:14, 16:13, 16:17

defendant [8] - 1:7, 1:12, 1:17, 1:22, 2:5, 2:10, 2:15, 45:11

defendant's [1] - 9:22

defendant-Counterclaimant [2] - 1:12, 1:17

defendants [27] - 6:7, 6:12, 7:8, 13:10, 14:3, 14:22, 15:1, 15:10, 15:17, 17:1, 17:3, 19:1, 19:11, 19:15, 19:21, 23:4, 28:9, 28:24, 29:21, 29:23, 30:10, 30:12, 31:10, 32:2, 32:13, 33:16, 44:7

defendants' [2] - 7:2, 18:22

defending [1] - 14:1

defense [6] - 14:20, 26:20, 27:2, 27:6, 28:6

definitely [2] - 8:3, 36:1

DELAWARE [1] - 1:1

Delaware [2] - 2:19, 46:1

delving [1] - 19:16

denied [1] - 44:12

deny [2] - 18:4, 28:8

depo [1] - 17:11

deposition [24] - 6:10, 7:5, 7:6, 7:10, 7:17, 10:12, 12:17, 13:21, 14:1, 14:20, 14:23, 15:24, 21:3, 21:15, 22:1, 23:21, 25:8, 25:11, 26:7, 26:17, 30:4, 30:22, 31:3, 40:19

depriving [1] - 38:21

description [1] - 22:2

despite [1] - 38:16

detail [4] - 37:19, 38:13, 38:15, 44:23

detailed [4] - 38:5, 38:7, 41:21, 41:24

details [3] - 12:1, 12:4, 15:13

determine [1] - 39:6

developed [1] - 36:11

developing [1] - 36:14

different [4] - 9:19, 11:13, 29:8, 32:4

difficult [2] - 19:12, 23:17

difficulty [1] - 38:7

direction [1] - 24:15

disagree [1] - 40:8

disagreed [3] - 21:6, 21:8, 22:3

disappearing [1] - 5:22

disclose [2] - 31:13, 43:24

disclosed [1] - 43:11

discoverable [1] - 32:13

discovered [1] - 27:3

discovery [16] - 6:6, 8:13, 10:10, 12:5, 14:17, 24:22, 27:5, 27:18, 30:8, 30:17, 30:21, 34:2, 38:21, 40:10, 40:11

discuss [5] - 8:24, 9:3, 10:7, 10:13, 14:4

discussed [5] - 12:6,

39:24

discussion [6] - 8:23, 10:21, 12:13, 23:9, 23:10, 31:1

discussions [2] - 9:8, 23:18

dispute [9] - 9:5, 9:17, 10:2, 11:12, 13:14, 24:8, 24:10, 27:18, 34:17

disputes [4] - 14:15, 15:9, 15:14, 33:24

distinct [1] - 26:2

DISTRICT [2] - 1:1, 1:1

District [1] - 2:21

divulge [1] - 29:7

DIXON [17] - 3:13, 6:15, 6:23, 11:2, 12:3, 17:22, 20:4, 25:5, 36:18, 38:4, 39:3, 41:19, 42:16, 42:20, 43:9, 43:22, 45:9

Dixon [13] - 4:14, 6:16, 6:22, 10:19, 13:8, 13:17, 13:21, 20:2, 25:4, 36:19, 38:3, 38:19, 41:12

Dixon's [2] - 15:21, 16:18

doctrine [2] - 31:21, 32:6

document [4] - 42:3, 42:6, 42:7, 42:8

documents [14] - 29:12, 30:13, 32:10, 33:11, 34:9, 34:14, 37:3, 37:5, 39:23, 39:24, 40:3, 41:15, 43:23, 44:22

Dodd [3] - 6:10, 9:10, 26:7

Dodd's [2] - 7:4, 17:11

done [2] - 16:6, 30:1

Doug [3] - 4:14, 6:16, 36:19

DOUGLAS [1] - 3:13

down [1] - 46:8

dropped [1] - 5:4

DUANE [1] - 3:6

Duane [1] - 4:12

due [1] - 8:14

duly [1] - 46:6

during [8] - 7:4, 7:16, 7:22, 10:4, 12:6, 12:2, 12:17, 13:20, 15:24, 17:11, 21:2, 21:14, 21:24, 46:9

**E**

**e-mail** [4] - 8:14, 11:1, 11:13, 17:19
**early** [1] - 40:2
**effect** [1] - 17:9
**effectively** [1] - 16:19
**effort** [2] - 15:8, 22:12
**either** [3] - 14:4, 15:8, 35:7
**employee** [1] - 35:23
**end** [3] - 17:7, 30:21, 33:1
**ended** [2] - 30:5, 36:12
**enforce** [1] - 33:22
**entire** [1] - 37:4
**entirely** [2] - 22:6, 32:3
**entitled** [1] - 14:8
**equivalent** [1] - 32:16
**especially** [1] - 41:2
**ESQ** [11] - 3:1, 3:4, 3:4, 3:7, 3:10, 3:12, 3:13, 3:15, 3:18, 3:21, 3:23
**essence** [2] - 32:1, 32:16
**essentially** [2] - 14:21, 35:3
**evening** [2] - 8:13, 11:16
**event** [1] - 23:14
**evidence** [2] - 46:6, 46:8
**exact** [2] - 11:8, 20:15
**exactly** [2] - 29:17, 29:24
**example** [2] - 13:9, 19:14
**examples** [1] - 39:10
**exchanged** [1] - 16:24
**exclusively** [1] - 24:4
**exhibit** [1] - 8:18
**Exhibit** [2] - 8:19, 16:14
**exhibits** [2] - 16:13, 46:10
**exist** [1] - 42:2
**expect** [1] - 25:8
**explain** [1] - 15:2
**explicitly** [7] - 7:8, 7:14, 8:5, 11:4, 11:6, 12:20, 20:11
**explore** [1] - 19:24
**explored** [2] - 21:6, 22:18
**exploring** [1] - 15:12
**extensive** [1] - 38:17

**extent** [3] - 9:13, 27:7, 44:16

**F**

**fact** [3] - 8:21, 19:21, 27:3
**factors** [1] - 41:4
**facts** [5] - 19:15, 26:8, 28:17, 28:22, 29:2
**failure** [1] - 36:12
**faith** [1] - 15:8
**FARNAN** [6] - 3:1, 3:1, 4:4, 5:2, 5:11, 5:21
**Farnan** [5] - 4:5, 5:1, 5:9, 5:20, 8:19
**features** [18] - 35:4, 35:5, 36:7, 36:9, 36:14, 37:2, 37:5, 37:6, 37:16, 37:22, 39:7, 39:17, 39:19, 39:22, 39:24, 40:4, 40:13, 44:23
**few** [3] - 10:18, 20:5, 29:6
**fifteen** [1] - 28:2
**figure** [3] - 27:4, 27:15, 38:22
**file** [1] - 24:19
**filed** [4] - 16:2, 16:5, 25:1, 43:23
**filing** [3] - 8:19, 10:10, 29:6
**filings** [1] - 44:4
**finally** [1] - 9:12
**financial** [3] - 35:12, 36:5, 38:2
**fine** [1] - 31:24
**first** [18] - 6:7, 6:11, 7:1, 10:19, 11:19, 12:1, 15:17, 20:5, 20:23, 23:12, 26:8, 26:15, 28:5, 34:9, 38:22, 39:11, 41:11, 45:4
**flag** [2] - 25:6, 27:20
**FLYNN** [4] - 3:10, 4:9, 5:6, 6:2
**Flynn** [1] - 4:10
**focus** [1] - 15:14
**follow** [1] - 25:18
**following** [2] - 11:15, 31:21
**footnote** [1] - 9:14
**FOR** [1] - 1:1
**force** [1] - 35:5
**forecast** [5] - 36:4, 40:23, 41:16, 42:7
**forecasting** [1] - 42:9
**forecasts** [8] - 26:4,

36:13, 37:15, 37:19, 37:21, 38:3, 40:20
**foregoing** [1] - 46:12
**form** [1] - 19:19
**format** [1] - 42:6
**forward** [2] - 6:5, 15:12
**four** [2] - 10:10, 11:14
**framing** [1] - 17:1
**fruitful** [2] - 8:23, 9:8
**full** [4] - 21:9, 23:24, 24:13, 46:12
**fuller** [2] - 22:12, 22:23
**fully** [7] - 7:4, 8:10, 9:5, 9:6, 10:16, 12:6, 21:24
**functionality** [3] - 39:8, 39:22, 40:6
**fundamentally** [1] - 32:5
**furtherance** [1] - 24:11
**future** [1] - 42:9

**G**

**Gates** [1] - 4:19
**GATES** [1] - 3:17
**gaudet** [3] - 30:9, 31:18, 32:7
**Gaudet** [3] - 4:11, 25:23, 29:23
**GAUDET** [7] - 3:7, 25:20, 25:22, 29:22, 30:19, 31:20, 32:11
**general** [2] - 33:13, 33:20
**Georgi** [1] - 41:4
**Georgi-Pacific** [1] - 41:4
**Georgia** [2] - 42:14, 43:8
**Georgia-Pacific** [2] - 42:14, 43:8
**given** [3] - 9:21, 18:1, 46:8
**GOLDMAN** [1] - 3:20
**goods** [1] - 41:23
**great** [2] - 18:16, 31:24
**guess** [5] - 18:2, 29:14, 33:6, 41:14, 42:16

**H**

**HAND** [1] - 46:14
**handcuffs** [1] - 38:24
**hard** [1] - 18:20

**head** [1] - 36:20
**hear** [4] - 6:11, 12:23, 36:17, 45:17
**heard** [5] - 9:1, 14:21, 32:9, 36:24, 44:6
**hearing** [1] - 46:9
**HEGGEM** [1] - 3:12
**Heggem** [2] - 4:14, 6:19
**held** [1] - 34:12
**help** [3] - 10:24, 23:22, 34:22
**helpful** [2] - 23:18, 32:22
**hereby** [2] - 33:18, 46:5
**history** [1] - 22:17
**hit** [1] - 36:20
**hold** [1] - 33:10
**holding** [1] - 7:9
**Honor** [62] - 4:5, 4:10, 4:17, 4:21, 5:2, 5:6, 5:7, 5:12, 6:1, 6:2, 6:3, 6:15, 6:23, 7:2, 7:20, 7:21, 8:4, 9:4, 9:12, 9:13, 10:2, 10:4, 10:17, 11:2, 11:5, 12:4, 13:2, 16:10, 16:23, 17:22, 18:7, 20:4, 21:2, 21:12, 25:5, 25:6, 25:16, 25:20, 25:22, 28:14, 29:22, 31:20, 32:19, 34:8, 35:2, 35:16, 36:18, 36:20, 37:3, 37:14, 38:4, 38:17, 39:3, 39:4, 39:12, 40:18, 41:19, 42:21, 43:10, 45:6, 45:9, 45:12
**HONORABLE** [1] - 2:21
**hope** [1] - 22:23
**hopefully** [1] - 27:17
**horizon** [1] - 25:13
**HORWITZ** [5] - 3:15, 4:16, 5:7, 6:1, 45:12
**Horwitz** [2] - 4:17, 45:13
**hour** [1] - 17:5
**hours** [2] - 10:10, 11:14
**hundreds** [2] - 40:2, 40:3
**hypothetical** [1] - 38:23

**I**

**identification** [1] -

13:11
**identified** [7] - 9:7, 12:15, 14:2, 15:18, 30:3, 31:14, 37:24
**identifies** [3] - 40:12, 41:23, 42:8
**identify** [4] - 28:15, 33:12, 36:22, 39:9
**identity** [1] - 28:22
**imagine** [1] - 19:14
**impasse** [6] - 7:7, 7:19, 8:3, 9:9, 10:15, 12:10
**implicate** [1] - 19:22
**important** [1] - 23:16
**impressions** [1] - 28:20
**improper** [2] - 7:11, 15:3
**IN** [1] - 1:1
**inadequate** [1] - 23:13
**Inc** [7] - 3:8, 3:8, 3:14, 3:19, 3:19, 3:24
**INC** [7] - 1:6, 1:11, 1:16, 1:21, 2:4, 2:9, 2:14
**Inc.** [1] - 5:17
**inclined** [2] - 22:15, 28:8
**include** [1] - 34:14
**included** [1] - 8:18
**includes** [1] - 41:22
**including** [1] - 35:13
**incomplete** [1] - 35:20
**incorrect** [1] - 22:4
**indeed** [5] - 7:18, 13:11, 14:2, 14:15, 20:11
**independent** [1] - 31:4
**indicate** [1] - 25:12
**indicated** [7] - 7:9, 9:7, 10:7, 12:11, 14:6, 21:6, 21:7
**indicates** [1] - 39:16
**indicating** [1] - 9:2
**indirectly** [1] - 27:7
**individual** [3] - 30:16, 30:18, 32:11
**info** [1] - 31:11
**information** [21] - 28:16, 28:18, 28:24, 29:1, 29:7, 29:17, 33:7, 33:9, 34:21, 35:14, 35:17, 36:13, 39:5, 39:18, 39:21, 41:5, 41:6, 42:4, 43:19, 44:1, 44:2
**information's** [1] - 40:23
**informed** [1] - 8:1

**infringement** [5] - 38:22, 39:9, 40:7, 40:14, 41:11
**infringing** [1] - 39:7
**initial** [1] - 10:19
**initiate** [1] - 45:14
**input** [1] - 42:14
**inquire** [1] - 7:24
**insight** [1] - 43:14
**instance** [4] - 10:6, 20:23, 21:5, 25:12
**instruct** [3] - 23:19, 31:3, 31:5
**instructions** [6] - 7:11, 9:23, 15:3, 15:6, 21:4, 25:9
**intellectual** [6] - 34:15, 34:24, 35:1, 36:21, 36:23, 43:5
**Intellectual** [2] - 9:18, 10:3
**intend** [1] - 17:3
**intended** [1] - 7:19
**interest** [10] - 6:9, 9:24, 11:23, 12:19, 12:21, 21:8, 23:3, 23:15, 24:1, 26:12
**interpretation** [1] - 22:4
**interrogatory** [5] - 19:20, 23:21, 31:16, 33:21, 41:7
**interrupt** [1] - 29:10
**intervention** [1] - 10:5
**introduction** [1] - 46:10
**investigating** [1] - 33:1
**invited** [1] - 7:15, 15:21
**involved** [1] - 27:5
**IP** [4] - 25:7, 26:10, 26:22, 27:7
**IRELL** [1] - 3:12
**Irell** [2] - 4:13, 6:16
**irrelevant** [1] - 35:22
**issue** [43] - 6:14, 6:17, 7:3, 7:4, 7:23, 8:3, 8:11, 9:1, 9:3, 9:16, 9:20, 9:22, 10:7, 10:13, 10:16, 11:6, 12:12, 14:19, 17:12, 18:3, 20:13, 21:1, 21:11, 22:14, 22:20, 22:24, 23:11, 23:14, 23:16, 23:23, 24:18, 25:6, 25:13, 25:17, 26:1, 26:2, 26:12, 27:6, 27:12, 27:22, 31:9, 37:6, 38:10

**issues** [15] - 6:6, 6:20, 8:6, 14:14, 14:18, 15:15, 17:1, 17:4, 18:10, 18:23, 19:24, 25:9, 28:3
**itself** [2] - 28:18, 37:11

**J**

**Jack** [1] - 4:21
**JOHN** [1] - 3:21
**JR** [1] - 3:21
**Judge** [2] - 2:21, 4:2
**judge** [1] - 24:5
**July** [3] - 2:17, 46:7, 46:14
**June** [4] - 7:21, 10:21, 16:9, 20:8
**Juniper** [18] - 3:14, 4:15, 5:16, 17:8, 34:1, 34:9, 34:11, 35:8, 36:17, 36:19, 38:5, 38:15, 42:8, 43:6, 43:23, 44:18, 44:24, 45:8
**juniper** [3] - 34:18, 36:7, 43:24
**JUNIPER** [1] - 2:14

**K**

**KABAT** [1] - 3:3
**Kabat** [2] - 4:7, 13:3
**kept** [1] - 35:17
**key** [1] - 27:6
**kind** [3] - 19:20, 27:19, 31:21
**kinds** [1] - 19:24
**King** [1] - 2:19
**knowledge** [1] - 19:10
**KROEGER** [13] - 3:4, 16:23, 28:13, 29:14, 31:9, 33:6, 34:7, 35:2, 35:16, 36:6, 40:17, 43:2, 45:6
**Kroeger** [18] - 4:7, 11:7, 13:4, 13:15, 14:11, 16:11, 16:13, 16:17, 16:19, 16:21, 28:14, 29:9, 31:7, 33:4, 34:22, 40:16, 41:13, 42:24

**L**

**last** [3] - 15:21, 21:12, 26:23
**late** [1] - 26:23
**law** [2] - 7:15, 22:3
**lead** [1] - 19:13

**learn** [1] - 41:10
**learned** [5] - 26:8, 26:13, 26:18, 28:17, 28:22
**least** [6] - 24:3, 33:12, 35:20, 38:20, 39:9, 39:13
**leaves** [2] - 22:11, 27:5
**led** [1] - 22:13
**LEDAHL** [5] - 3:4, 13:2, 16:10, 18:7, 25:16
**Ledahl** [6] - 4:6, 13:3, 16:8, 18:1, 18:6, 25:15
**left** [1] - 28:2
**legal** [1] - 24:12
**legitimate** [1] - 28:10
**lenders** [1] - 17:7
**LEONARD** [1] - 2:21
**letter** [11] - 10:11, 11:19, 14:17, 15:17, 15:19, 16:2, 16:15, 28:10, 30:11, 38:20
**letters** [1] - 17:19
**level** [3] - 37:18, 38:15, 44:23
**license** [2] - 26:19, 27:2
**licenses** [2] - 41:2, 42:12
**light** [2] - 26:3, 27:18
**likely** [1] - 27:6
**limited** [1] - 24:9
**line** [6] - 4:11, 4:22, 11:7, 13:6, 16:11, 35:10
**list** [1] - 32:24
**literally** [1] - 26:22
**LLC** [8] - 1:3, 1:8, 1:13, 1:18, 2:1, 2:6, 2:11, 5:16
**LLP** [7] - 3:1, 3:6, 3:9, 3:12, 3:15, 3:17, 3:23
**local** [1] - 32:18
**locate** [1] - 21:21
**locating** [1] - 38:7
**log** [2] - 32:16, 33:10
**logs** [1] - 33:11
**LONG** [1] - 3:23
**look** [4] - 18:19, 18:22, 39:14, 44:19
**looked** [1] - 44:8
**looking** [2] - 34:4, 44:15
**Lora** [1] - 4:22
**LORA** [1] - 3:23

**M**

**machine** [1] - 46:8
**mail** [4] - 8:14, 11:1, 11:13, 17:19
**maintained** [1] - 11:4
**maintaining** [1] - 14:22
**Manella** [2] - 4:14, 6:16
**MANELLA** [1] - 3:12
**manner** [1] - 21:23
**market** [1] - 36:10
**material** [1] - 44:9
**materially** [1] - 9:19
**Matt** [3] - 4:11, 25:23, 29:23
**matter** [7] - 17:20, 18:11, 18:22, 33:13, 43:11, 44:3, 45:19
**MATTHEW** [1] - 3:7
**MCKENNA** [1] - 3:23
**mean** [8] - 7:18, 13:20, 18:2, 22:9, 31:4, 31:22, 32:21, 42:22
**meaning** [1] - 30:21
**meaningful** [1] - 15:7
**meaningfully** [1] - 6:13
**meet** [24] - 7:1, 7:22, 8:6, 8:8, 8:16, 8:21, 10:23, 11:6, 11:9, 12:6, 12:8, 12:24, 13:8, 17:16, 19:6, 19:12, 20:6, 20:8, 20:12, 22:7, 22:23, 23:13, 24:16, 27:1
**meeting** [2] - 16:5, 16:19
**memory** [1] - 20:18
**mental** [1] - 28:20
**MERAKI** [1] - 2:9
**Meraki** [2] - 3:8, 4:13
**merger** [2] - 34:10, 35:19
**merits** [2] - 18:18, 23:14
**Meru** [2] - 3:19, 4:18
**MERU** [1] - 1:16
**met** [5] - 6:13, 6:18, 7:3, 8:10, 11:10
**Michael** [1] - 4:10
**MICHAEL** [1] - 3:10
**mid** [1] - 40:2
**might** [10] - 9:8, 19:2, 19:8, 19:9, 19:13, 19:18, 22:12, 22:24, 30:2, 30:7
**million** [2] - 37:10,

**mine** [1] - 24:5
**minimum** [1] - 38:24
**minute** [1] - 45:15
**minutes** [3] - 28:2, 33:24, 34:3
**misunderstood** [1] - 29:20
**Monday** [3] - 24:17, 24:23, 27:16
**months** [3] - 10:11, 29:6, 37:12
**moreover** [3] - 8:4, 10:2, 21:12
**MORRIS** [2] - 3:6, 3:9
**Morris** [2] - 4:10, 4:12
**most** [1] - 17:6
**mostly** [1] - 14:14
**motion** [4] - 6:20, 16:5, 24:19, 24:24
**move** [3] - 12:12, 28:3, 28:7
**moved** [1] - 15:12
**moving** [1] - 10:8
**MR** [48] - 4:4, 4:9, 4:20, 5:2, 5:6, 5:7, 5:11, 5:21, 6:2, 6:15, 6:23, 11:2, 12:3, 13:2, 16:10, 16:23, 17:22, 18:7, 20:4, 25:5, 25:16, 25:20, 25:22, 28:13, 29:14, 29:22, 30:19, 31:9, 31:20, 32:15, 33:6, 34:7, 35:2, 35:16, 36:6, 36:18, 38:4, 39:3, 40:17, 41:19, 42:16, 42:20, 43:2, 43:9, 43:22, 45:6, 45:9, 45:12
**MS** [1] - 6:3
**multi** [1] - 39:14
**multi-day** [1] - 39:14
**multiple** [1] - 10:15
**MY** [1] - 46:14

**N**

**nail** [1] - 36:20
**name** [1] - 30:16
**names** [1] - 28:15
**narrative** [2] - 30:6, 31:1
**narrow** [2] - 15:8, 22:24
**narrowing** [1] - 22:13
**native** [1] - 42:6
**nature** [1] - 9:17
**Nav** [3] - 26:10, 26:22, 27:7
**Navigation** [1] - 25:7

**necessarily** [2] - 19:22, 20:17
**need** [3] - 23:24, 24:13, 45:13
**negotiation** [2] - 35:10, 38:23
**NETWORKS** [10] - 1:3, 1:6, 1:8, 1:13, 1:16, 1:18, 2:1, 2:6, 2:11, 2:14
**Networks** [8] - 3:8, 3:14, 3:19, 4:12, 4:15, 5:15, 5:17, 38:6
**never** [3] - 10:12, 27:17, 34:18
**New** [1] - 46:2
**new** [2] - 27:3, 27:18
**news** [1] - 26:24
**next** [2] - 24:17, 45:14
**NICHOLS** [1] - 3:9
**Nichols** [1] - 4:11
**night** [1] - 26:16
**nonetheless** [1] - 22:18
**nonmoving** [1] - 10:6
**North** [1] - 2:19
**Notary** [1] - 46:5
**note** [1] - 41:1
**noted** [1] - 16:12
**notes** [1] - 28:20
**nothing** [5] - 14:21, 15:2, 37:4, 37:16, 43:13
**number** [5] - 5:15, 6:6, 27:14
**Number** [1] - 5:17
**numbers** [2] - 37:16, 37:17
**numerous** [1] - 39:23

## O

**objection** [2] - 14:23, 21:7
**objections** [8] - 13:20, 13:23, 15:11, 17:10, 21:3, 46:9, 46:10, 46:10
**obligation** [3] - 8:9, 10:23, 11:9
**obtain** [2] - 39:18, 39:21
**obviously** [3] - 13:15, 18:8, 25:18
**occasions** [3] - 8:10, 10:15, 39:13
**odds** [1] - 32:5
**OF** [2] - 1:1, 46:3
**offer** [1] - 16:1

**offered** [2] - 8:24, 15:1
**often** [1] - 39:15
**Oliver** [1] - 4:19
**OLIVER** [1] - 3:18
**once** [1] - 16:4
**one** [15] - 5:16, 5:17, 22:22, 23:16, 25:24, 27:14, 33:5, 33:16, 34:17, 35:9, 36:2, 37:24, 39:19, 40:10, 41:3
**ones** [1] - 41:15
**open** [2] - 7:10, 30:5
**open-ended** [1] - 30:5
**opens** [1] - 32:3
**operations** [1] - 27:8
**opportunity** [3] - 9:3, 10:13, 19:24
**opposed** [1] - 36:5
**opposite** [1] - 9:17
**oral** [2] - 10:4, 11:5
**order** [9] - 23:9, 24:13, 24:16, 24:20, 24:24, 26:3, 33:18, 34:5, 44:10
**ordering** [1] - 45:2
**ordinary** [1] - 35:18
**otherwise** [3] - 13:19, 31:24, 32:13
**outcome** [2] - 18:12, 19:7
**overrule** [1] - 6:8
**own** [2] - 21:20, 31:23

## P

**P.A** [1] - 3:20
**p.m** [4] - 2:18, 8:13, 11:15, 45:19
**Pacific** [3] - 41:4, 42:14, 43:8
**paid** [3] - 41:2, 42:18, 43:4
**papers** [1] - 18:11
**part** [4] - 18:15, 18:17, 18:24, 44:13
**participated** [2] - 13:5, 20:9
**particular** [3] - 10:6, 19:15, 35:6
**particularly** [2] - 18:16, 37:6
**particulars** [2] - 14:7, 14:9
**parties** [13] - 6:18, 7:6, 7:18, 7:23, 9:9, 10:14, 11:10, 12:9, 12:11, 15:22, 24:16, 26:11, 28:6
**party** [9] - 10:9, 19:2

10:9, 24:21, 28:16, 29:12, 30:12, 32:8, 33:9
**passing** [1] - 21:15
**patented** [1] - 36:9
**PAUL** [1] - 3:4
**Paul** [2] - 4:6, 28:14
**pay** [1] - 35:10
**people** [4] - 28:22, 31:14, 32:20, 33:7
**perhaps** [2] - 23:21, 37:1
**period** [1] - 44:20
**person** [2] - 29:3, 32:12
**perspective** [1] - 15:4
**persuaded** [1] - 44:10
**persuasive** [1] - 9:15
**Phillips** [4] - 4:21, 5:4, 5:19, 5:22
**PHILLIPS** [3] - 3:20, 3:21, 4:20
**phone** [1] - 11:3
**pick** [1] - 31:13
**place** [1] - 10:12
**placed** [3] - 35:4, 35:8, 43:6
**Plaintiff** [7] - 1:4, 1:9, 1:14, 1:19, 2:2, 2:7, 2:12
**plaintiff** [27] - 3:5, 4:6, 7:24, 8:1, 9:21, 11:3, 11:18, 12:18, 12:24, 20:24, 21:22, 23:6, 24:19, 24:21, 26:9, 28:5, 28:11, 32:12, 34:1, 34:2, 37:23, 41:18, 44:11, 44:15, 44:24, 45:3, 45:5
**plaintiff's** [6] - 8:17, 14:17, 16:14, 20:14, 22:1, 28:3
**plaintiffs** [5] - 10:21, 21:4, 31:22, 33:21, 37:21
**play** [2] - 26:4, 27:16
**plenty** [1] - 30:4
**point** [10] - 9:4, 9:13, 13:18, 15:21, 18:5, 21:13, 28:1, 30:20, 42:12, 45:1
**points** [5] - 6:24, 20:5, 34:17, 40:18, 41:13
**policies** [1] - 27:8
**position** [10] - 7:2, 8:1, 8:2, 9:16, 11:4, 12:19, 15:2, 17:9, 20:14, 22:19
**positions** [2] - 17:13,

**possible** [5] - 15:9, 19:2, 19:7, 19:18, 34:16
**possibly** [2] - 11:8, 22:13
**potential** [1] - 25:12
**potentially** [1] - 34:20
**Potter** [1] - 4:17
**POTTER** [1] - 3:15
**practice** [2] - 29:2, 29:5
**pre** [1] - 44:19
**pre-acquisition** [1] - 44:19
**precisely** [3] - 13:12, 15:18, 23:4
**predates** [1] - 41:9
**predominantly** [1] - 24:4
**preexisting** [1] - 42:3
**preference** [1] - 18:9
**prepared** [1] - 46:12
**pressed** [1] - 36:22
**presumably** [1] - 23:6
**prevent** [1] - 24:22
**previous** [1] - 26:21
**price** [4] - 37:9, 43:10, 43:14, 43:15
**primarily** [1] - 41:7
**privilege** [16] - 6:9, 10:1, 11:23, 12:20, 12:22, 17:10, 21:8, 23:3, 23:15, 24:2, 25:9, 26:13, 30:15, 32:16, 33:10, 33:11
**privileged** [1] - 18:21
**problem** [3] - 18:15, 18:17, 18:24
**process** [11] - 7:1, 8:7, 8:16, 8:22, 12:7, 12:8, 19:7, 19:13, 20:7, 20:12, 27:1
**produce** [4] - 32:10, 34:11, 37:12, 44:20
**produced** [10] - 26:15, 34:19, 35:12, 36:1, 38:1, 38:5, 39:5, 39:23, 40:12, 42:5
**produces** [1] - 29:12
**producing** [2] - 30:13, 34:18
**product** [7] - 28:19, 31:21, 32:5, 35:14, 36:1, 37:18, 44:23
**product-level** [2] - 37:18, 44:23
**production** [2] - 34:6, 40:3
**products** [8] - 34:10, 35:25, 36:8,

38:12, 40:1, 40:4, 40:14
**professional** [1] - 46:4
**proof** [1] - 27:10
**proper** [1] - 10:1
**property** [7] - 34:15, 34:16, 34:24, 35:1, 36:21, 36:23, 43:5
**propose** [2] - 19:2, 19:10
**proposed** [2] - 19:11, 33:17
**proposing** [1] - 19:2
**protected** [2] - 19:22, 21:9
**protective** [2] - 24:20, 24:24
**prove** [1] - 36:13
**provide** [8] - 19:18, 21:16, 21:17, 29:12, 30:15, 33:17, 33:18, 43:14
**provided** [6] - 21:23, 41:6, 41:20, 44:16, 44:18, 44:24
**providing** [1] - 41:17
**public** [2] - 43:12, 44:3
**Public** [1] - 46:5
**pull** [1] - 42:4
**pursue** [1] - 16:4
**put** [1] - 25:23

## Q

**quarterly** [2] - 37:17, 38:11
**quarters** [1] - 42:10
**questions** [16] - 7:12, 9:24, 10:19, 13:12, 15:11, 15:18, 18:19, 19:3, 19:5, 20:21, 21:1, 21:5, 21:11, 25:3, 30:23, 31:6
**quick** [1] - 20:5
**quickly** [2] - 27:20, 43:10
**quote** [2] - 7:14, 11:8

## R

**raise** [8] - 7:20, 7:23, 8:5, 10:9, 17:3, 27:12, 27:13, 27:20
**raised** [6] - 11:6, 11:9, 15:24, 17:4, 28:9, 37:13
**raising** [1] - 17:2
**rather** [2] - 19:16, 23:11

**reach** [1] - 23:23
**reached** [3] - 7:6, 7:19, 12:10
**read** [3] - 7:15, 30:10, 34:14
**really** [3] - 15:5, 15:12, 18:20
**reasonable** [1] - 42:14
**reasons** [2] - 17:1, 22:21
**receive** [1] - 21:19
**received** [3] - 8:14, 11:13, 15:11
**recognized** [1] - 10:4
**recollection** [2] - 20:11, 20:20
**record** [9] - 7:9, 13:16, 13:17, 13:22, 14:3, 25:24, 26:5, 43:12, 44:3
**recreated** [1] - 44:17
**redacted** [1] - 26:14
**reduced** [1] - 29:5
**reduction** [1] - 29:1
**ReefEdge** [19] - 5:15, 7:13, 8:15, 9:2, 9:6, 9:10, 9:15, 21:14, 26:9, 27:9, 38:8, 38:13, 38:16, 38:20, 39:5, 39:13, 39:14, 42:1, 42:16
**REEFEDGE** [7] - 1:3, 1:8, 1:13, 1:18, 2:1, 2:6, 2:11
**ReefEdge's** [6] - 6:8, 6:24, 17:6, 17:9, 17:13, 36:21
**refer** [1] - 40:5
**reference** [1] - 21:15
**referred** [1] - 7:16
**referring** [2] - 42:17, 43:2
**refusing** [1] - 9:10
**regarding** [2] - 41:6, 43:17
**regardless** [2] - 33:2, 35:19
**regards** [2] - 17:18, 29:15
**regular** [1] - 42:5
**related** [5] - 5:15, 26:2, 34:2, 35:23, 35:24
**relates** [1] - 27:22
**relating** [1] - 34:16
**relation** [1] - 6:10
**relationship** [1] - 26:9
**relevance** [3] - 34:23, 36:4, 39:1
**relevant** [13] - 28:16,

31:11, 33:7, 33:9, 34:5, 34:20, 35:9, 35:21, 36:13, 36:24, 38:2, 41:3, 43:7
**relief** [6] - 11:23, 14:10, 23:4, 23:20, 44:11, 45:2
**rely** [1] - 30:3
**relying** [3] - 13:10, 23:6, 23:7
**remaining** [1] - 33:24
**remedy** [1] - 19:2
**report** [1] - 46:6
**reporter** [3] - 5:14, 46:5, 46:5
**REPORTER** [1] - 46:3
**reports** [2] - 40:21, 40:23
**representation** [5] - 16:18, 17:15, 33:19, 44:14, 44:21
**representations** [2] - 22:8, 44:7
**represented** [1] - 10:22
**reproduce** [1] - 9:10
**request** [3] - 6:7, 18:4, 28:8
**requested** [4] - 17:2, 38:13, 38:16, 42:1
**requesting** [1] - 33:14
**requests** [1] - 44:12
**required** [1] - 29:7
**resolution** [4] - 18:17, 22:14, 23:23, 24:14
**resolve** [5] - 15:9, 22:20, 22:24, 23:22
**resolved** [2] - 15:14, 24:18
**respect** [16] - 6:17, 6:20, 7:1, 8:6, 8:11, 9:15, 20:5, 20:21, 21:1, 21:13, 23:2, 29:11, 30:2, 37:14, 37:19, 38:8
**respected** [1] - 20:13
**respond** [4] - 8:17, 17:23, 20:2, 40:16
**responded** [1] - 8:20
**response** [9] - 8:7, 16:21, 21:9, 21:10, 31:19, 33:20, 39:2, 41:8
**responses** [2] - 31:15, 31:16
**results** [3] - 26:14, 36:5, 38:2
**revenue** [2] - 37:19, 42:9
**Rich** [2] - 4:17, 45:12

**RICHARD** [1] - 3:15
**ripe** [5] - 9:5, 10:5, 10:17, 26:2, 27:13
**ripened** [1] - 7:4
**roaming** [2] - 35:7, 35:24
**roughly** [1] - 34:8
**Rule** [1] - 29:16
**rule** [1] - 31:21
**rules** [2] - 15:6, 32:18
**rulings** [2] - 46:9, 46:11
**run** [3] - 8:22, 20:7, 20:13
**Russ** [2] - 4:7, 13:3
**RUSS** [1] - 3:3

## S

**sake** [1] - 19:17
**sale** [1] - 41:22
**sales** [11] - 35:13, 38:5, 38:7, 38:8, 38:10, 40:20, 41:6, 41:21, 41:24, 42:2, 44:15
**Sandeep** [1] - 29:4
**satisfied** [3] - 8:9, 10:23, 16:20
**scale** [1] - 16:7
**schedule** [3] - 25:1, 43:3, 43:13
**schedules** [6] - 34:12, 34:13, 35:20, 35:21, 35:22, 35:24
**scope** [2] - 11:22, 29:17
**Scott** [1] - 4:19
**SCOTT** [1] - 3:18
**seal** [1] - 46:14
**seamless** [1] - 35:6
**searches** [1] - 38:17
**searching** [2] - 21:21, 38:14
**SEC** [2] - 43:23, 44:3
**second** [3] - 9:4, 17:24, 26:16
**see** [3] - 29:19, 35:17, 41:9
**seeking** [17] - 11:24, 14:10, 15:6, 19:21, 23:5, 24:21, 28:5, 28:15, 28:19, 28:21, 33:21, 36:3, 37:22, 39:1, 40:21, 40:22, 44:11
**seeks** [1] - 27:1
**seem** [2] - 19:4, 28:10
**segments** [1] - 43:17

15:23, 16:1
**separate** [5] - 39:13, 39:20, 40:22, 42:7, 44:1
**several** [1] - 20:8
**shorthand** [1] - 46:8
**shortly** [1] - 45:17
**showing** [1] - 44:22
**sides'** [1] - 23:1
**similar** [4] - 18:9, 25:8, 28:23, 44:19
**simply** [5] - 9:13, 27:14, 28:21, 32:23, 40:23
**Singhal** [1] - 29:4
**situation** [1] - 15:10
**sold** [1] - 41:24
**solely** [1] - 17:18
**someone** [1] - 43:20
**somewhat** [2] - 23:17, 26:1
**sorry** [3] - 5:11, 42:21, 43:19
**sort** [1] - 35:14
**sought** [3] - 15:18, 28:24, 29:1
**sounds** [1] - 5:3
**source** [5] - 39:11, 39:12, 39:15, 39:19
**speaking** [2] - 29:20, 43:19
**speaks** [1] - 18:18
**specific** [7] - 11:23, 26:6, 30:23, 35:5, 37:2, 37:5, 42:2
**specifically** [2] - 32:18, 40:5
**speculate** [1] - 19:12
**SPENCE** [1] - 3:20
**spend** [1] - 22:15
**spoken** [1] - 32:24
**STARK** [1] - 2:21
**Stark** [1] - 4:2
**start** [2] - 6:6, 6:12
**started** [1] - 26:22
**state** [1] - 15:16
**State** [1] - 46:1
**statement** [1] - 11:8
**statements** [1] - 46:8
**STATES** [1] - 1:1
**States** [1] - 1:2
**stating** [1] - 20:17
**statutes** [1] - 17:6
**still** [6] - 5:5, 5:20, 5:24, 14:22, 23:7, 41:14
**Street** [1] - 2:19
**subject** [5] - 14:15, 14:16, 17:20, 18:21,

33:13
**submitted** [1] - 44:9
**subpoenaed** [1] - 25:7
**substantive** [1] - 6:19
**sufficient** [1] - 31:17
**suggest** [2] - 14:4, 22:9
**suggested** [1] - 25:18
**suggesting** [2] - 8:15, 20:16
**suggests** [1] - 13:18
**supplement** [1] - 31:15
**SYSTEMS** [2] - 1:11, 2:4
**systems** [1] - 3:8
**Systems** [2] - 3:19, 4:13

## T

**technical** [1] - 39:23
**TELECONFERENCE** [1] - 2:23
**Teleglobe** [1] - 24:9
**ten** [1] - 26:18
**terms** [2] - 31:13, 41:5
**testimony** [7] - 26:13, 29:13, 30:14, 32:10, 32:22, 32:23, 40:19
**THE** [47] - 1:1, 1:1, 4:1, 4:23, 5:3, 5:8, 5:13, 5:23, 6:4, 6:21, 10:18, 11:17, 12:23, 16:8, 16:16, 17:21, 17:24, 20:1, 22:5, 25:14, 25:19, 25:21, 27:24, 29:9, 29:19, 30:9, 31:7, 31:18, 32:7, 33:3, 33:15, 34:22, 35:11, 36:2, 36:16, 38:1, 38:19, 40:15, 41:12, 42:11, 42:19, 42:23, 43:21, 44:5, 45:8, 45:11, 45:16
**themselves** [2] - 36:10, 36:11
**therefore** [1] - 12:12
**therein** [1] - 46:6
**thereon** [1] - 46:11
**thereto** [2] - 46:9, 46:10
**they've** [5] - 19:3, 31:14, 33:8, 35:11, 37:10
**third** [7] - 9:12, 28:6, 28:16, 29:11, 30:11, 32:8, 33:8
**third-party** [1] - 28:16

**three** [3] - 6:24, 34:8, 37:12
**Tim** [1] - 6:19
**timing** [1] - 24:23
**Timothy** [1] - 4:14
**TIMOTHY** [1] - 3:12
**tiny** [1] - 22:22
**today** [5] - 17:17, 27:18, 38:16, 44:8, 44:12
**took** [3] - 7:18, 21:1, 46:7
**touch** [1] - 34:3
**transaction** [2] - 41:20, 41:21
**transcript** [1] - 46:12
**Trapeze** [16] - 34:11, 34:12, 34:24, 35:8, 36:8, 38:6, 39:6, 41:3, 41:9, 42:13, 42:17, 42:18, 43:3, 43:4, 43:6, 43:18
**Trapeze's** [2] - 36:21, 36:23
**tried** [1] - 46:6
**trips** [1] - 39:14
**true** [1] - 46:12
**try** [2] - 28:7, 41:10
**trying** [3] - 15:13, 22:16, 38:14
**Tuesday** [2] - 2:17, 7:22
**TUNNELL** [1] - 3:9
**turn** [1] - 33:23
**turned** [1] - 14:14
**twenty** [2] - 10:10, 11:14
**twenty-four** [2] - 10:10, 11:14
**two** [9] - 8:10, 10:11, 21:16, 26:11, 26:15, 39:9, 39:13, 39:20, 40:11
**type** [1] - 23:20
**types** [1] - 40:13

**U**

**ultimately** [1] - 36:11
**un-redacted** [1] - 26:14
**unable** [1] - 38:18
**unclear** [3] - 16:5, 22:11, 42:18
**under** [1] - 32:22
**understandably** [1] - 14:24
**undertake** [1] - 14:3
**unhelpful** [1] - 32:23
**unique** [1] - 27:21

**UNITED** [1] - 1:1
**United** [1] - 2:21
**unless** [1] - 30:14
**unpack** [1] - 18:20
**unwilling** [1] - 12:11
**up** [8] - 6:9, 25:13, 25:18, 27:3, 32:3, 32:21, 32:23, 36:12

**V**

**vaguely** [1] - 7:16
**valuation** [5] - 35:3, 37:1, 43:5, 44:2, 44:22
**valuations** [2] - 34:16, 35:7
**value** [2] - 34:23, 43:17
**valuing** [1] - 37:5
**Ventures** [3] - 9:18, 10:3, 18:11
**versus** [1] - 5:16
**viable** [1] - 19:4
**view** [4] - 10:22, 18:22, 32:11, 42:13
**voiced** [1] - 21:4

**W**

**waited** [1] - 10:9
**waived** [1] - 23:12
**week** [2] - 7:22, 24:17
**Weiss** [3] - 11:14, 13:24, 15:23
**welcome** [1] - 9:2
**whole** [1] - 18:3
**willing** [2] - 19:9, 31:15
**willingness** [1] - 10:7
**Wilmington** [1] - 2:19
**wind** [2] - 32:21, 32:23
**wireless** [1] - 35:24
**wish** [1] - 20:3
**withheld** [1] - 40:10
**withholding** [2] - 38:3, 40:9
**withstanding** [1] - 11:18
**WITNESS** [1] - 46:14
**witness** [6] - 9:22, 27:4, 30:2, 30:24, 31:5, 31:11
**witnesses** [2] - 28:16, 28:17
**WLAN** [1] - 41:15
**words** [1] - 20:16
**worldwide** [1] - 38:11
**worms** [1] - 32:4
**worth** [1] - 3^:15

**Y**

**yield** [1] - 19:7